IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| T.J. REVERS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 22-1700 |
| ) | |
| UNITED STEEL, PAPER AND FORESTRY, ) | |
| RUBBER, MANUFACTURING, ENERGY, ) | |
| ALLIED INDUSTRIAL AND SERVICE ) | |
| WORKERS INTERNATIONAL UNION, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiffs challenge the negotiation and ratification process of a collective bargaining agreement ("CBA"). Presently before the Court are renewed Motions to Dismiss the Amended Complaint (Docket No. 32) pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure filed by Plaintiffs' employer, Pennsylvania-American Water Company ("PAWC") (Docket No. 38), with brief in support (Docket No. 39), and the Union Defendants[1] (Docket No. 41), with brief in support (Docket No. 42). Plaintiffs filed responses and briefs in opposition to the motions (Docket Nos. 43-46), and the Union Defendants and PAWC filed reply briefs (Docket Nos. 47, 48). The motions are ripe for decision.

For the reasons set forth herein, PAWC's motion will be granted, and the Union Defendants' motion will be granted in part and denied in part.

---

[1]   The Union Defendants are the Steelworkers Union, Local 1211 and Ross McClellan.

I.  **BACKGROUND**

As the parties are well-acquainted with the factual background of this case, at this juncture the Court will present an abbreviated version of the facts, as alleged in the Amended Complaint and in the light most favorable to Plaintiffs, that are relevant to the motions presently before the Court. On February 9, 2023, the Court held a status conference after defendants filed motions to dismiss the original complaint and discussed the legal issues with counsel in depth. *See* Transcript, Docket No. 37. During that discussion, Plaintiffs' counsel requested, and received, permission to file an Amended Complaint to address the issues raised in the conference. The Amended Complaint was filed and defendants renewed their motions to dismiss it for failure to state a valid claim. Defendants contend that the Amended Complaint should be dismissed in its entirety, with prejudice, with one exception – the Union Defendants do not seek dismissal of the LMRDA claim against McClellan (Docket No. 48 at 15). Plaintiffs represent that the Court need not deal with their allegations that elections for local union officers were conducted improperly because that issue was remedied. Docket No. 46 at 7.

Plaintiffs are employees of PAWC and members of Local 1211. Since February 14, 2022, Local 1211 was certified by the National Labor Relations Board ("NLRB") as the exclusive collective bargaining representative for the relevant employees of PAWC. Amended Complaint ¶ 10. McClellan was a staff representative of the USW National Body who acted as the authorized representative of the USW National Body and Local 1211 in the negotiation and ratification of the CBA with PAWC. Amended Complaint ¶¶ 8, 16.

The parties negotiated a CBA for a term from June 30, 2022, until June 29, 2026. Plaintiffs attached the finalized CBA to the Amended Complaint (Docket No. 32-2). PAWC offered the tentative CBA with favorably enhanced terms for acceptance upon the express condition that it

was ratified on or before July 15, 2022, or failing such ratification those enhanced terms would be replaced by less favorable terms.  Amended Complaint ¶¶ 20, 24.  Plaintiffs did not attach a copy of the notice of this enhancement to the Amended Complaint because they do not possess a copy of it.  Amended Complaint ¶ 24.  Defendants provided the tentative CBA as an attachment to their respective motions to dismiss (Docket No. 38-9; Docket No. 42-2).

The tentative CBA provides, in relevant part:

> **Ratification Incentives Offered CONTINGENT upon Ratification and Signing of Tentative Agreement by July 15, 2022**
>
> Pennsylvania American Water makes the following additional offers to incentivize ratification.  These additional offers, as outlined below, are contingent upon ratification and execution/signing by authorized representatives of the Union no later than July 15, 2022.  Should the offer be ratified and signed as indicated, the effective date of the Agreement will be the date the union transmits their signed offer document to the Company.  **Should the offer not be ratified and signed as indicated, the additional offers below will be fully withdrawn.**

Docket No. 38-9 at 5.  The tentative CBA was signed on June 30, 2022, by Diane Holder, VP of Operations of WPCA, and McClellan on behalf of the Union.  Docket No. 38-9 at 7.

"The tentative CBA was offered by PAWC for acceptance upon the express condition that it was ratified by a vote of the employees in its Pittsburgh District bargaining unit."  Amended Complaint ¶ 20.  The tentative CBA was presented to employees on June 29, 2022, by McClellan.  The only notice of the meeting was by virtue of a notice posted by McClellan on June 27, 2022, on bulletin boards at various work locations in the PAWC Pittsburgh District.  Amended Complaint ¶ 22.  McClellan held two meetings on June 29, 2022, one in the morning and one in the evening.  Amended Complaint ¶¶ 23, 25.

Plaintiffs allege a variety of shortcomings with the ratification process: (1) there were insufficient copies of the tentative agreement for every attendee to possess their own copy; (2) McClellan responded to a question about the "management rights" provision by falsely stating

3

that it was boilerplate and PAWC could not make any managerial changes without negotiating with the union; (3) McClellan did not read all articles of the CBA at both meetings; (4) McClellan falsely denied that there were any changes in job classifications and stated that his negotiation notes would take precedence over the language of the CBA; (5) McClellan falsely stated that employees could accrue 52 weeks of sick leave and could use it all in daily increments as they desired; (6) McClellan stated he was unaware that certain prior benefits (overtime meals, pay while traveling to overtime, cleanup time, etc.) were not contained in the tentative agreement and was unable to explain their omission; and (7) the explanations at the morning and evening sessions differed. Amended Complaint ¶¶ 25, 27.

Some members did not attend either meeting on June 29, 2022, and asked to vote by telephone. Some were told they could not, while others were permitted to vote by phone. Some individuals were told they would be permitted to vote by phone when they stated they would ratify the CBA. Some individuals were told they could not vote by phone when they stated they would reject the CBA. Amended Complaint ¶ 28(a)-(e).

One attendee requested that the vote be postponed, because the deadline was not until July 15, 2022, to allow McClellan to determine why the certain prior benefits (resulting in the loss of thousands of dollars in annual compensation to many members) were eliminated from the tentative agreement. McClellan refused to consider any delay and told the attendees if the vote did not take place on June 29, 2022, the enhanced benefits would not be available. Amended Complaint ¶ 28(f)-(i).

The majority of those employees voting on June 29, 2022, voted to ratify the CBA. Amended Complaint ¶ 28(j). The vote was close; Plaintiffs aver that a change of less than ten

votes would have resulted in rejection of the CBA. Amended Complaint ¶ 46. Plaintiffs allege that allowing employees to vote by phone affected the outcome. Amended Complaint ¶ 48.

Plaintiffs contend that PAWC was aware that the tentative CBA was required to be ratified by a majority vote of the members of the Pittsburgh District bargaining unit because, among other reasons, "PAWC's offer of enhancements to the tentative agreement was conditioned on ratification by a vote of the bargaining unit members by July 15, 2022." Amended Complaint ¶ 37. Plaintiffs allege that PAWC was aware in July and August 2022 of questions concerning the validity of the June 29, 2022, ratification and vote. Amended Complaint ¶ 38. The CBA was signed on September 1, 2022. Docket No. 32-2 at 29.

The Amended Complaint asserts seven counts: (1) the USW National Body's failure to provide fair representation under the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185 et seq.; (2) declaratory relief under the LMRA against the USW National Body and Local 1211; (3) declaratory relief under the LMRA against McClellan; (4) the USW National Body's failure to discharge its duties under the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 et seq.; (5) declaratory relief against the USW National Body and Local 1211 under the LMRDA; (6) declaratory relief under the LMRDA against McClellan; and (7) LMRA and LMRDA claims against PAWC.

## II. STANDARD OF REVIEW

In considering a Rule 12(b)(6) motion to dismiss, the factual allegations contained in the complaint must be accepted as true and must be construed in the light most favorable to the plaintiff, and the Court must "'determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir.

2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 n.8 (2007).  While Federal Rule of Civil Procedure 8(a)(2) requires only "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" the complaint must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Phillips*, 515 F.3d at 231 (quoting *Twombly*, 550 U.S. at 555).  Moreover, while this standard "does not require 'detailed factual allegations,'" Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).  The Supreme Court has noted that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  The standard "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).  Moreover, the requirement that a court accept as true all factual allegations does not extend to legal conclusions; thus, a court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

To review a complaint under this standard, the Court proceeds in three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016).  First, the Court notes the elements of a claim.  *See id.* (quoting *Iqbal*, 556 U.S. at 675).  Second, the Court eliminates conclusory allegations.  *See id.* (quoting *Iqbal*, 556 U.S. at 679).  Finally, the Court assumes the well-pleaded

facts that are left are true and assesses "'whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Also, in reviewing a motion to dismiss, "a court may, in addition to the contents of the complaint, consider any attached exhibits and evidence beyond the complaint including public records . . . , documents essential to [plaintiff's] claim which are attached to defendant's motion, and items appearing in the record of the case." *Smith v. Lincoln Ben. Life Co.*, Civ. Action No. 08-01324, 2009 WL 789900, at *5 (W.D. Pa. Mar. 23, 2009) (internal citation and quotation marks omitted), *aff'd*, 395 F. App'x 821 (3d Cir. 2010).

Additionally, in the courts' consideration of whether claims – if they are to be dismissed – will be dismissed with prejudice, Federal Rule of Civil Procedure 15(a)(2) directs that leave to amend should be freely given "when justice so requires." Denial of leave to amend may be appropriate where there is "'undue delay, bad faith, dilatory motive, prejudice, and futility.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)).

### III.    LEGAL ANALYSIS

#### A.  Consideration of the tentative CBA

As an initial matter, the Court must decide whether it may consider the tentative CBA at this stage of the case. The document was referenced in the Amended Complaint ¶ 24, but was not attached thereto. The tentative CBA was separately provided by both the Union Defendants and PAWC. *Compare* Docket Nos. 38-9 and 42-2.

The general rule is set forth in *Yandrisovitz v. Ohio State Life Ins. Co.*, No. 5:18-CV-1036, 2018 WL 4203840 (E.D. Pa. Aug. 31, 2018):

> "In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint,

7

> matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004). "Documents that the defendant attaches to the motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to the claim; as such, they may be considered by the court" without converting a 12(b)(6) motion into a motion for summary judgment, provided that neither party disputes the document's authenticity. *Pryor v. NCAA*, 288 F.3d 548, 560 (3d Cir. 2002) (quoting 27A Fed. Proc., L.Ed. § 62:466 (West 2009)).

*Id.* at *2. A collective bargaining agreement is a classic example of the kind of document that may be considered at this stage. *See, e.g., Miles v. Nat'l Football League*, 641 F. Supp. 3d 91, 94 n. 1 (D.N.J. 2022) ("the court may consider the CBA without converting the motion to dismiss to a motion for summary judgment because the CBA is 'integral to or explicitly relied upon in the complaint.'") (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), and *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In this case, however, Plaintiffs <u>do</u> challenge the authenticity of the tentative CBA document. Docket No. 44 at 9. That challenge is weak. The Amended Complaint avers that copies of the tentative CBA were distributed at the meetings on June 29, 2022, and states that a copy of the tentative CBA would have been attached to the complaint if counsel had a copy. Amended Complaint ¶ 24. Plaintiffs recognize that the document is signed by representatives of PAWC and the union. Plaintiffs do not contest the validity of those signatures, but merely point out that the signatures appear to relate only to the ratification incentives. The same document was separately submitted by both the company and the union. Plaintiffs' opposition brief affirmatively cites the document attached to PAWC's motion to dismiss for the proposition that PAWC required the agreement to be ratified (Docket No. 44 at 7). Plaintiffs engage in an extensive examination of the document with respect to whether ratification is required for the incentives or the CBA as a whole (Docket No. 46 at 8-9). In short, there is very little doubt that the tentative CBA document is authentic.

That does not end the analysis, however. "The Third Circuit Court of Appeals has not explicitly addressed the degree to which an attachment's authenticity must be in dispute before a court should not consider it." *Yandrisovitz*, 2018 WL 4203840 at *2. The standard appears to be very lenient – "as long as a plaintiff raises the issue, he is entitled to validate the authenticity of the documents." *Id.* The Court recognized that this "lenient approach to authenticity objections risks opening the sort of tactical path to plaintiffs that the Third Circuit Court of Appeals sought to close off by considering attachments in the first place: a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied and then raising a pro forma authenticity objection when the defendant produced the document." *Id.* at n.2. In the absence of clear precedent, however, the Court declined to consider the contested document at the motion to dismiss stage. *Id.* (deferring a similarly weak authenticity challenge). *Accord In re RenovaCare, Inc. Sec. Litig.*, No. 2:21-CV-13766, 2024 WL 2815034, at *14 (D.N.J. June 3, 2024) ("But the vast majority of case law uses the language 'undisputedly authentic' in analyzing whether a district court may consider an extraneous document as part of a motion to dismiss.") (citations omitted). Similarly, in the exercise of caution, this Court will not consider the tentative CBA document at this stage of the case.

### B. Hybrid LMRA Claims

Defendants contend that the LMRA claims must be dismissed as a matter of law for numerous reasons: (1) the Court lacks subject-matter jurisdiction because the gravamen of Plaintiffs' theory is that the CBA is invalid; (2) Plaintiffs failed to allege the elements of a prima facie case; (3) Plaintiffs cannot state a hybrid claim because they concede that PAWC did not breach the CBA; (4) the allegations do not suffice to plead a breach of the union's duty of fair

9

representation; (5) Plaintiffs failed to plead facts to support that ratification of the CBA was required; and (6) Plaintiffs failed to plead facts to support that any injury directly resulted from the alleged breach of duty of fair representation.

The Court will not address each of these arguments because it concludes that it lacks subject-matter jurisdiction over the LMRA claim. It is clear that Plaintiffs are pursuing a "hybrid § 301 claim." Transcript, Docket No. 37 at 10. Plaintiffs do not allege that PAWC (or the Union) violated the CBA; instead, they argue the CBA is invalid due to errors in the ratification process.

To state a viable hybrid § 301 action, a plaintiff must allege facts sufficient to show that the employer breached the CBA **and** that the Union breached its duty to fairly represent him/her. *Brown v. 1199J Union*, No. CV234452SDWCLW, 2023 WL 6805976, at *2 (D.N.J. Oct. 16, 2023). *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983) ("the two claims are inextricably interdependent. 'To prevail against either the company or the Union, ... [employee-plaintiffs] must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating a breach of duty by the Union.'"); *Felice v. Sever*, 985 F.2d 1221, 1226 (3d Cir. 1993) ("In the 'hybrid' suit, the plaintiff will have to prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union, and vice versa.") (citing *United Parcel Serv. Inc. v. Mitchell*, 451 U.S. 56, 66–67 (1981) (Stewart, J. concurring)).

In *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 661–62 (1998), the Supreme Court held that because the complaint "alleges no violation of the collective-bargaining agreement, neither we nor the federal courts below have subject matter jurisdiction over this case under §

301(a) of the Labor–Management Relations Act." In a concurring opinion, Justice Stevens explained that "[o]ur conclusion that the federal courts do not have § 301(a) jurisdiction over the Union's suit therefore comports with the important goal of protecting the primary jurisdiction of the National Labor Relations Board in resolving disputes arising from the collective-bargaining process." *Id.* at 662.

The same analysis applies in this case. Plaintiffs forthrightly admit that PAWC did not do anything wrong during the ratification process, *see* Transcript at 10-11, and that PAWC did not breach the CBA. As in *Textron*, this is a case in which Plaintiffs do not allege a violation of the CBA, but instead argue the CBA is invalid. This Court lacks subject-matter jurisdiction of that kind of claim under the LMRA.

The LMRA claim against McClellan in his individual capacity must be dismissed for an additional reason. *See Carino v. Stefan*, 376 F.3d 156, 159–60 (3d Cir. 2004) ("the law is clear that individual union officers are not personally liable to third parties for actions taken on behalf of the union in the collective bargaining process."). Plaintiffs did not address this precedential Third Circuit decision in their opposition brief and appear to abandon the LMRA claim against McClellan. (Docket No. 46 at 20).

In sum, the LMRA claims will be dismissed.

### C. LMRDA Claims

Defendants contend that the LMRDA claims fail for several reasons: (1) the statute does not provide for claims against employers, such as PAWC; (2) Plaintiffs failed to plead facts to establish that ratification by the members was required; and (3) Plaintiffs failed to plead facts to show discriminatory treatment of any specific member. The Court will address each contention.

11

### 1. LMRDA does not support claims against employers

PAWC is correct that under Third Circuit precedent, there is no claim under the LMRDA against an employer. *Tomko v. Hilbert*, 288 F.2d 625, 625–26 (3d Cir. 1961) ("the LMRDA does not provide a civil remedy for the vindication of rights contained in the bill of rights against one who in violating such rights is not acting in the capacity of an official or agent of a labor union."); *accord Wiggins v. United Food & Com. Workers Union, Loc. No. 56*, 420 F. Supp. 2d 357, 365 (D.N.J. 2006), aff'd sub nom. *Wiggins v. United Food And Com. Workers Union, Loc. #56*, 303 F. App'x 131 (3d Cir. 2008) (LMRDA "'only regulates the relationship between the union and its members' and, thus, Plaintiff's claims under 29 U.S.C. § 411 against its employer [ ] are without merit."). The statutory provision authorizing civil actions specifically refers to actions "against a labor organization." 29 U.S.C. § 412.

Plaintiffs did not address this authority in their opposition brief or otherwise cite any precedential decision that would authorize an LMRDA claim against an employer. Plaintiffs' theory that PAWD failed to investigate its employees' concerns about the ratification process is not cognizable. In *Hatchigian v. Interface Elec., Inc.*, No. CIV. A. 91-5438, 1993 WL 4138, at *16 (E.D. Pa. Jan. 6, 1993), aff'd, 6 F.3d 779 (3d Cir. 1993), the Court explained that the LMRDA only regulates the relationship between the union and its members and an employee cannot escape this rule by alleging that the employer conspired with the union to violate his rights under the LMRDA. The LMRDA claim against PAWC will be dismissed.

### 2. Ratification

Section 101(a)(1) of the LMRDA provides:

> "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the

>labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

29 U.S.C. § 411(a)(1).

The Union Defendants argue that an LMRDA claim based upon the ratification process must fail if the union had no duty to submit the CBA to its members for ratification. In *Wiggins*, the Court concluded: "Here, there is no express requirement in the constitution, by-laws or rules and regulations of the union that union members be given the right to approve proposed extensions of collective bargaining agreements. In the absence of such a requirement, Plaintiff's claim under Section 101(a)(1) must fail as a matter of law." 420 F.Supp.2d at 364. The parties dispute whether ratification was required in this case. Plaintiffs allege that PAWC made ratification by the members an express condition of the CBA. Amended Complaint ¶ 20. That allegation must be taken as true at this stage of the case.[2]

In any event, it is clear that a ratification vote was actually held on June 29, 2022. In *Maoilo v. Klipa*, 655 F. Supp. 1139, 1143 (W.D. Pa. 1987), which was cited by the Union Defendants (Docket No. 42 at 24), the Court concluded that a union owes its membership a duty of fair representation in the conduct of a vote, regardless whether the vote is binding or advisory. The Court commented: "It is likewise nonsensical to suggest that a union must negotiate a contract in good faith but may manipulate an advisory vote on the contract with impunity." *Id.*

Plaintiffs allege that the ratification vote was unfair and discriminatory in several respects. Notably, Plaintiffs allege that some members who supported the CBA were permitted to vote by phone, while other members who opposed the CBA were not permitted to vote by phone.

---

[2] As explained above, the Court will not consider, at this stage of the case, the impact of the language in the tentative CBA to the effect that the incentives were "contingent upon ratification and execution/signing by authorized representatives of the Union." (Docket No. 38-9 at 5).

13

Amended Complaint ¶ 28(a)-(e). The Amended Complaint does not specifically allege that the ability to vote by phone was causally related to the employee's position, nor does it allege that this issue affected the outcome of the vote. At this stage, however, all reasonable inferences must be drawn in favor of Plaintiffs.

A union "cannot be liable for negligence or poor judgment, but only for bad faith or arbitrary conduct." *Id.* (citing *Bazarte v. United Transportation Union*, 429 F.2d 868, 872 (3d Cir.1970)). The Court in *Maoilo* observed that because the Plaintiffs' "proof requirements are so uniquely high, such cases are often susceptible to disposition on summary judgment." *Id.* The Court concludes that the allegations in this case with respect to unfairness in the ratification process are similarly more appropriate for resolution at the summary judgment stage based upon a fully developed evidentiary record.

3. Discrimination against specific member

The Union Defendants contend that Plaintiffs failed to identify the members who were denied the right to vote by phone. They argue that a plaintiff does not have standing to enforce the rights of other union members, citing *Mamula v. United Steelworkers of Am.*, 304 F.2d 108, 113 (3d Cir. 1962). That decision is distinguishable. It involved a union president whose name was not placed on the ballot for district director. The Court concluded that Title IV, not Title I, governs the procedures for nominating and electing officers. *Id.* at 109. In dicta, the Court commented that "even if" the claim was governed by Title I, "[t]here is nothing in the record showing any of plaintiff's rights as a union member set forth in Title I were violated by defendants. The facts point the other way, for he participated in the meeting, was its presiding officer, and had ample opportunity to nominate candidates." *Id.* at 113.

14

This case, by contrast, is brought on behalf of numerous members of the union and clearly alleges a violation of Title I of the LMRDA. The Court agrees that it will be incumbent upon Plaintiffs to demonstrate that they each have standing because their own rights were violated. At this stage, however, the Amended Complaint sufficiently alleges that Plaintiffs have standing to pursue the LMRDA claim.

4. Claim against McClellan

As noted above, the Union Defendants do not seek to dismiss the LMRDA claim against McClellan. That claim would appear to fit comfortably within the statutory text because McClellan was acting as the representative of the Union. *NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 194 (1967).

In sum, the motion to dismiss the LMRDA claim against PAWC will be granted; and the motion to dismiss the LMRDA claims against the Union Defendants will be denied.

D. Leave to amend

Defendants raised the same arguments for dismissal of the LMRA claims (and the LMRDA claim against PAWC) in response to the original complaint. The Court held a thorough discussion with counsel prior to the filing of the Amended Complaint. It is readily apparent that after two bites at the apple, Plaintiffs are unable to allege cognizable claims under the LMRA or against PAWC.

Further amendment would be futile and inequitable and therefore will not be permitted. *See Shane*, 213 F.3d at 115; *Harr v. Buczak*, No. CV 21-1555, 2024 WL 4064139, at *7 (W.D. Pa. Sept. 5, 2024). The dismissal of the LMRA claims and the LMRDA claim against PAWC will

therefore be with prejudice and PAWC will be dismissed as a party. The Union Defendants shall file an answer to the LMRDA claim on or before February 13, 2025. Counsel should meet and confer about mandatory ADR.

### IV. CONCLUSION

For the reasons set forth, the renewed Motion to Dismiss the Amended Complaint filed by PAWC (Docket No. 38) will be granted. The claims against PAWC will be dismissed with prejudice and PAWC will be dismissed from the case. The Union Defendants' Motion to Dismiss (Docket No. 41) will be granted in part, in that the LMRA claims will be dismissed with prejudice, and denied in part, with respect to the LMRDA claims. The Union Defendants shall file an answer to the LMRDA claim on or before February 13, 2025.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Dated: January 13, 2025

cc/ecf: All counsel of record